IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LASMER INDUSTRIES, INC.      :
                           :
Plaintiff,             :
                           :      Case No. 2:09-cv-527
vs.                     :
                           :      Judge Graham
AM GENERAL, LLC et al.      :
                           :      Magistrate Judge Norah
                           :      McCann King
Defendants            :

**ORDER**

     Plaintiff, Lasmer Industries, Inc. ("Lasmer") brings this action against AM General, LLC ("AMG"); Dayton T. Brown, Inc. ("DTB"); three officers of the Defense Supply Center Columbus ("DSCC") in their individual capacities, specifically Karen Spradlin, Shirley Spratt, and Donald Lushbaugh and five John Does ("government defendants"). Lasmer has alleged claims against AMG for fraud, negligent misrepresentation, tortious interference with contracts, tortious interference with business relationships, deceptive trade practices, anticompetitive actions, and civil conspiracy. Lasmer has alleged claims against DTB for negligent misrepresentation and civil conspiracy. Lasmer has alleged against the government defendants a Bivens action, a claim under 42 U.S.C. § 1983, and a claim for civil conspiracy.

     DTB and the government defendants have filed separate

motions to dismiss the complaint. Docs. 13, 17. AMG has filed a motion for judgment on the pleadings. Doc. 15. Lasmer has filed a motion to amend its complaint. Doc. 22. All these motions are now before this court and ripe for review.

## I.  PROCEDURAL HISTORY

The claims in this case all surround Lasmer's debarment from federal contracting in 2005. "Debarment" is a process through which certain government agencies may declare that a government contractor is presumed not to be responsible. A debarred contractor is excluded from receiving contracts, and agencies are not to solicit offers from, award contracts to, or consent to subcontracts with these contractors unless the agency head determines there is a compelling reason for such an action. 48 C.F.R. § 9.405(a).

On September 15, 2005, the DLA debarred Lasmer and various officers of the company from government contracting for a period of three years for unsatisfactory performance on one or more government contracts pursuant to 48 C.F.R. § 9.406-2(b)(1)(i)(B). See Hickey, Jr. et al v. Chadick et al, No. 2:08-cv-00824, Doc. 54, p. 6.  On January 14, 2008, seventeen days before Lasmer's 2005 debarment was set to expire, DSCC issued an administrative debarment report (the "2008 debarment report") to

the DLA recommending an extension of Lasmer's debarment. Id. at 24. On March 25, 2008, Lasmer and its officers filed an action for temporary restraining order ("TRO") and preliminary injunction in this court, asking this court to enjoin the administrative proceedings extending Lasmer's debarment. Lasmer Industries, Inc. et al v. McQuistion et al, No 2:08-cv-00286, Doc. 4.  On June 13, 2008, this court denied the TRO and dismissed all claims except for Lasmer's facial challenge to the regulations. Id. at Doc. 27.

On July 29, 2008, the DLA issued a decision extending Lasmer's debarment for an additional six month period, through July 31, 2008, pursuant to 48 C.F.R. § 9.406-2(c), based on Lasmer having continued to do business with the government despite its three-year debarment. See Hickey, No. 2:08-cv-00824, Doc. 54, p. 6. On August 28, 2008, Lasmer and its officers brought an action in this court pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, et seq. to challenge the expired 2005 and 2008 debarments. Hickey, 2:08-cv-00824.  On August 5, 2010, this court granted the government summary judgment on those claims, finding that neither the 2005 nor the 2008 debarment decisions were arbitrary or capricious or a violation of Lasmer's or the officers' constitutional rights. Id. at Doc. 54.

On June 23, 2009, Lasmer filed the present case, asserting claims against AMG, DTB, and the government defendants for wrongdoing in connection with its 2005 debarment. The circumstances of the 2008 debarment are not at issue in this case.

## II.   FACTS[1]

Plaintiff Lasmer is a government contractor, supplying parts to the United States ("the government") for use on a High Mobility Multipurpose Wheeled Vehicle ("HMMWV"). Complaint, ¶ 19. These parts include idler arms, ball joints, and seat belts. Complaint, ¶19. Defendant AMG manufactures the HMMWV and also supplies these same replacement parts to the government. Complaint, ¶ 20.

In 2004, Lasmer and AMG both submitted bids on a solicitation from the U.S. Army for HMMWV doors ("the solicitation"). Complaint, ¶ 36. The solicitation was delayed due to changes in the specifications for the doors. Complaint, ¶ 37. The deadline to submit proposals to contract for the solicitation was January 21, 2005. Complaint, ¶ 38. On January 20, 2005, one day before proposals were due, Lasmer submitted its final proposal on the solicitation. Complaint, ¶ 39.

---

[1] Unless otherwise noted, all facts are taken from Lasmer's Complaint and for purposes of this order only, assumed to be true.

On January 21, 2005, the day after Lasmer submitted its bid for the doors, Karen Spradlin, of the DSCC, submitted an Administrative Debarment Report to the Defense Logistics Agency ("DLA") recommending that Lasmer be debarred from government contracting. Complaint, ¶ 40, Exhibit A.  The 2005 debarment report recommended Lasmer's debarment based on the shipment of nonconforming idler arm assemblies and ball joint assembly kits, parts intended for use on the HMMWV suspension system. Complaint, Exhibit A. The 2005 debarment report noted a number of nonconformities with both Lasmer's idler arms and Lasmer's ball joints. Complaint, Exhibit A.

On February 1, 2005, the DLA proposed Lasmer for debarment and placed it on the General Services Administration's List of Parties Excluded from Federal Procurement or Nonprocurement Programs (otherwise known as the "Excluded Parties List System" or "EPLS"). See 48 C.F.R. §§ 9.405(b), 9.404(a)(1) and (d). Complaint, ¶ 45. On April 18, 2005, Lasmer learned it was the low bidder on the solicitation but was ineligible to receive the award for Army doors because it had been proposed for debarment. Complaint, ¶¶ 48-49, Exhibit B.  AMG was awarded the solicitation during Lasmer's debarment. Complaint, ¶ 50.

On September 15, 2005, the DLA debarred Lasmer and various officers of the company from government contracting for a period of three years for unsatisfactory performance on one or more

5

government contracts pursuant to 48 C.F.R. § 9.406-2(b)(1)(i)(B). See Hickey, No. 2:08-cv-00824 , Doc. 54, p. 6.

Lasmer believes that its proposed debarment, which caused it to be placed on the EPLS and subsequently lose the solicitation, was a result of wrongdoing by DTB, AMG, and the government defendants. Apparently, the HMWVV suspension system, including ball joints and idler arms, was not able to handle the loads and conditions it was being subjected to in the field. Complaint, ¶ 106. AMG was in the process of redesigning the suspension system so that it could handle these loads and conditions. Complaint, ¶ 107. In 2004, DSCC, a major inventory control point for HMMWV parts for the U.S. Military, and AMG began a series of "summits" to discuss HMMWV replacement parts. Complaint, ¶ 26. AMG was the only HMMWV parts supplier to participate in these summits. Complaint, ¶ 28. These summits resulted in an agreement between AMG and DSCC to direct HMMWV parts to AMG. Complaint, ¶ 29. AMG became the sole supplier of numerous HMMWV parts. Complaint, ¶ 30. Lasmer believes that AMG misrepresented that Lasmer was to blame for the failures of the HMMWV suspension system. Complaint, ¶ 108-109. Lasmer believes this information was relied on by the government when the government proposed it for debarment and placed it on the EPLS. Complaint, ¶ 104.

Lasmer had a contract with the government to provide seat

belts for HMWVVs. The contract required that Lasmer's belts comply with the Federal Motor Vehicle Safety Standards ("FMVSS"). Complaint, ¶ 62. Sometime prior to January 18, 2005, AMG commissioned DTB to test the seat belts that Lasmer had supplied to the government ("first DTB test"). Complaint, ¶ 53, Exhibit C. AMG had custody of the seat belts prior to the first DTB report.  Complaint, ¶ 56. DTB did not conduct this first DTB test in accordance with the FMVSS as was required by Lasmer's contract. Complaint, ¶ 57. The results of the first DTB test alleged critical defects in the Lasmer seat belts. Complaint, ¶ 55, Exhibit C. Lasmer did not learn of this first DTB test report until June 23, 2005, during the debarment proceeding. Complaint, ¶ 59. The DSCC never tested the Lasmer seat belts itself. Complaint, ¶ 83. The debarring official's decision to debar Lasmer for three years was based, in part, on the first DTB report provided by AMG. Complaint, ¶ 86. Lasmer believes this information was relied on by the government when the government proposed it for debarment and placed it on the EPLS. Complaint, ¶ 95.

In 2009, Lasmer commissioned two tests of HMMWV seat belts from the same production run as those tested in the First DTB report. Complaint, ¶60. One of those two tests was conducted by DTB. Complaint, ¶61. The result of this test (the "second DTB report") showed that the Lasmer belts conformed to every part of

the FMVSS that were incorporated into Lasmer's contract. Complaint, ¶62, Exhibit E.

Under Lasmer's theory of the case, DSCC and AMG sought to exclude Lasmer from competition for the solicitation under an agreement reached at the HMMWV summits. Complaint, ¶ 76.  AMG and its employees and/or officials intentionally misled the DSCC by providing test results that did not reflect actual nonconformity with Lasmer's contracts. Complaint, ¶ 87. AMG acted intentionally to exclude Lasmer from competition for the solicitation and put Lasmer out of business by misrepresenting facts about Lasmer products. Complaint, ¶ 88-89. Lasmer was damaged by not winning the solicitation and by nearly being put out of business for three years. Complaint, ¶ 90-91.

## III. PERSONAL JURISDICTION

In DTB's motion to dismiss Lasmer's complaint, DTB argued that this court did not have personal jurisdiction over it based on "the facts alleged in Lasmer's complaint" and because "there is not a single factual statement anywhere in Lasmer's complaint or exhibits that would support [personal jurisdiction]." Doc. 13, p. 21, 22.  In response, Lasmer came forward with affidavit evidence, which they argue demonstrates this court does have personal jurisdiction over DTB. See Serras v. First Tennessee Bank Nat. Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989)(holding

8

that in considering a motion to dismiss under Rule 12(b)(2), the court may determine the motion on the basis of affidavits alone); See also CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996)(holding that when a court rules on a motion to dismiss pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, it must consider the pleadings and affidavits in the light most favorable to the plaintiff). The affidavit outlines the nature and extent of DTB's contacts with the state of Ohio. In its reply, DTB did not make any attack on the sufficiency of Lasmer's affidavit, nor did it even mention its personal jurisdiction argument again. Doc. 28. As such, this court finds that DTB has impliedly conceded that the affidavit evidence offered by Lasmer is sufficient to confer personal jurisdiction.

**IV.  STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When considering a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  Iqbal, 129 S.Ct. at 1949-50; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56. Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings are subject to the same analysis as motions to dismiss under Rule 12(b)(6). Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008).

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S.Ct. at 1949; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").  The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3.  Thus, "a court considering a

motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## V. DISCUSSION

## A.  Negligent Misrepresentation and Tortious Interference Claims

AMG and DTB argue that Lasmer's claims of negligent misrepresentation, tortious interference with contracts, and tortious interference with business relationships are barred by the statute of limitations. Lasmer alleges that AMG engaged in negligent misrepresentation, tortiously interfered with its contracts, and tortiously interfered with its business relationships when AMG made false statements that resulted in Lasmer being proposed for debarment, placed on the EPLS, losing the solicitation and being debarred.  Complaint, ¶¶ 115-135, 136-152, 153-164.  Lasmer claims that DTB also engaged in negligent misrepresentation when it communicated the DTB report to AMG. Complaint, ¶ 217-227.

Ohio Revised Code § 2305.09(D) sets out a four-year statute of limitations for tort actions not specifically covered by other sections of the Code. Ohio courts have found that this section applies to claims of negligent misrepresentation, tortious interference with a contract, and tortious interference with business relationships. See Neff v. Std. Fed. Bank, No. 2:06-cv-856, 2007 U.S. Dist. LEXIS 71976, at *16-17 (S.D. Ohio Sept. 27, 2007)(negligent misrepresentation); Koury v. City of

Canton, 221 Fed. Appx. 379, 386 (6th Cir. 2007) (tortious interference with contract); Morrow v. Reminger & Reminger Co. LPA, 915 N.E.2d 696, 712, 183 Ohio App. 3d 40 (Ohio Ct. App. 2009) (tortious interference with a business relationship).

The above claims do not receive the benefit of the discovery rule. While § 2305.09 expressly makes the discovery rule available for claims of fraud and certain other torts, it does not extend the rule to claims of negligent misrepresentation, tortious interference with contract, and tortious interference with business relationships. "The legislature's express inclusion of a discovery rule for certain torts arising under § 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute, including negligence." See Local 219 Plumbing & Pipefitting Indus. Pension Fund v. Buck Consultants, LLC, 311 Fed. Appx. 827, 830 (6th Cir. 2009) (quoting Investors REIT One v. Jacobs, 546 N.E.2d 206, 211, 46 Ohio St. 3d 176 (Ohio 1989)); see also Wooten v. Republic Sav. Bank, 876 N.E.2d 1260, 1266-1267, 172 Ohio App. 3d 722 (Ohio Ct. App. 2007); Neff, 2007 U.S. Dist. LEXIS 71976, at *16-17(negligent misrepresentation); Vitek v. AIG Life Brokerage, No. 06-cv-615, 2008 U.S. Dist. LEXIS 82132, at *27-28 n.9 (S.D. Ohio Sept. 22, 2008) (tortious interference). For claims of negligent misrepresentation and tortious interference, the statute begins to run when the events

giving rise to the claim occur. See Koury v. City of Canton, 221 F. Appx. 379, 386 (6th Cir. 2007)(tortious interference with contract); Vitek, 2008 U.S. Dist. LEXIS 82132 at *27(tortious interference with business relationship); Schnippel Constr., Inc. v. Profitt, 2009 Ohio 5905, ¶ 13 (Ohio Ct. App. Nov. 9, 2009)(where a cause of action for negligent misrepresentation accrued at the time when the representation was made, plaintiff relied on it, and was damaged thereby). [3]

According to the Complaint, AMG engaged in negligent misrepresentation and tortious interference with a contract and business relationships when it made false statements that resulted in Lasmer being proposed for debarment, placed on the EPLS, losing the solicitation, and being debarred.  Complaint, ¶¶ 115-135, 136-152, 153-164.  Likewise, according to the Complaint, DTB engaged in negligent misrepresentation when it made a false statement that resulted in Lasmer being proposed for debarment, placed on the EPLS, losing the solicitation, and being debarred. Complaint, ¶¶ 217-227. Karen Spradlin recommended Lasmer for debarment on January 21, 2005, and Lasmer

---

[3]The Schnippel court also discussed the delayed damages theory, whereby a cause of action will not accrue until the damages occur. Schnippel Constr., 2009 Ohio 5905 at ¶¶ 11-25. Lasmer did not rely on a theory of delayed damages in its opposition motions, but even if it had, this theory would not change the court's ruling because Lasmer was damaged from the moment it was placed on the EPLS on February 1, 2005.

was subsequently placed on the EPLS on February 1, 2005. Complaint, ¶¶40, 45.  Lasmer was notified it did not receive the solicitation due to the proposed debarment on April 18, 2005. Complaint, Exhibit B.  Thus, the alleged false statements by AMG and DTB must have occurred sometime prior to February 1, 2005 and April 18, 2005, in order for these injuries to have resulted from those alleged false statements. In order for Lasmer's claims to fall within the limitations period, Lasmer must have filed its claim within four years from those respective dates, or by February 1, 2009 and April 18, 2009. Lasmer filed its Complaint on June 23, 2009, outside the limitations period. Lasmer's claims for negligent misrepresentation and tortious interference with a contract and with business relationships are time barred.

Lasmer alleges that the date of accrual for these claims is the date that the DTB report was ultimately communicated to the debarring official. That communication was not made by either AMG or DTB. Lasmer's claims arose when DTB and AMG communicated their allegedly wrongful information and Lasmer was allegedly injured thereby, which occurred, at the latest, on February 1, 2005 and April 18, 2005.

Lasmer claims that its tortious interference with contract and business relationships claims are not barred by the statute of limitations because they are grounded in fraud, thus

15

triggering the application of the discovery rule under Ohio Revised Code § 2305.09(C). Under Ohio law, "[t]he ground of the action and the nature of the demand determine which statute of limitation is applicable." Plumbing & Pipefitting Indus. Local 219 Pension Fund v. Buck Consultants, LLC, No. 4:07-CV-1609, 2007 U.S. Dist. LEXIS 89790, at *10-11 (N.D. Ohio Dec. 6, 2007) (quoting Kunz v. Buckeye Union Inc., Co., 437 N.E.2d 1194, 1196, 1 Ohio St. 3d 79 (Ohio 1982)(internal quotation omitted)). "In Ohio the applicable statute of limitations is determined not from the form of pleading or procedure, but from the gist of the complaint." Hibbett v. Cincinnati, 446 N.E.2d 832, 836, 4 Ohio App. 3d 128 (Ohio Ct. App. 1982).

Claims of tortious interference, unlike claims for fraud, do not necessarily involve misrepresentations. Compare A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council, 651 N.E.2d 1283, 1294, 73 Ohio St. 3d 1 (Ohio 1995) (listing the elements of a claim for tortious interference) with Williams v. Aetna Fin. Co., 700 N.E.2d 859, 868, 83 Ohio St. 3d 464 (Ohio 1998) (listing the elements of a claim for fraud). Here, the fact that Lasmer alleges that a fraudulent misrepresentation was made is not an element of Lasmer's claim for tortious interference. Rather, AMG's alleged interference with Lasmer's business relationships with the government and with its government contracts forms the basis of its tortious

16

interference claim. The fact that the alleged interference took the form of a false representation is not sufficient to convert that claim into a fraud claim; the alleged false representation was simply the means used to achieve the interference. Ohio courts have traditionally found that claims for tortious interference fall within Ohio Rev. Code § 2305.09(D), which addresses other injuries to the rights of plaintiff, not § 2305.09(C), which addresses fraud. See, e.g., Wilkerson v. Hartings, No. C-081160, 2009 Ohio 4987, ¶¶ 10-11 (Ohio App. Sept. 25, 2009) (tortious interference with familial relationships); Morrow v. Reminger & Reminger Co. LPA, 915 N.E.2d 696, 712, 183 Ohio App. 3d 40 (Ohio Ct. App. 2009); Samman v. Nukta, No. 85739, 2005 Ohio 5444, ¶ 23 (Ohio Ct. App. October 13, 2005); Tri-State Computer Exch., Inc. v. Burt, No. C-020345, 2003 Ohio 3197, ¶ 20 (Ohio Ct. App. June 20, 2003). Lasmer's claims of negligent misrepresentation and tortious interference are governed by the statute of limitations in § 2305.09(D), and the discovery rule does not apply to save them. The court notes that Lasmer has also asserted a fraud claim which is governed by § 2305.09(C), and which is not barred by that limitations provision.

**B. Deceptive Trade Practices Claim**

AMG argues that Lasmer's Deceptive Trade Practices Act claim is barred by the statute of limitations. Lasmer alleges that AMG's alleged false statements that resulted in Lasmer losing the solicitation and being debarred were a deceptive trade practice, in violation of the Ohio Deceptive Trade Practices Act.  Ohio Rev. Code § 4165.02(A)(10).  Complaint, ¶¶ 165-175. Lasmer argues that its Deceptive Trade Practices Act claim is grounded in fraud, and therefore, a four-year statute of limitations period is applicable and the discovery rule applies.

This court is aware of only one case that has addressed the issue of what statute of limitations period applies to Deceptive Trade Practices Act claims. In Plumbing & Pipefitting Indus. Local 219 Pension Fund v. Buck Consultants, LLC, No. 4:07-CV-1609, 2007 U.S. Dist. LEXIS 89790, at *10-11 (N.D. Ohio December 6, 2007) the court found that the four-year statute of limitations from Ohio Revised Code § 2305.09(D) applied because the deceptive trade practice in that case was based on plaintiff's claims for professional negligence. Id. at *10-11. The court stated that the alleged violation of the Act was based on the fact that defendants had allegedly "misrepresent[ed] the

standard, quality, and grade of their services" Id. at *10, which is a violation of Ohio Revised Code § 4165.02(A)(9).

Here, Lasmer has asserted a claim for deceptive trade practices under Ohio Revised Code § 4165.02(A)(10), a different section than the one at issue in Buck Consultants. Section 4165.02(A)(10) states that a person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person "[d]isparages the goods, services, or business of another by false representation of fact." Looking at the ground of the action and the nature of the demand here, this court determines that the statute of limitations applicable to this claim is the one for defamation. Defamation claims, unlike fraud claims, involve the same type of disparaging comments applicable to a violation of § 4165.02(A)(10). Compare Harris v. Bornhorst, 513 F.3d 503, 522 (6th Cir. 2008) (quoting Akron-Canton Waste Oil v. Safety-Kleen Oil Servs., 611 N.E.2d 955, 962, 81 Ohio App. 3d 591 (Ohio Ct. App. 1992) (stating that part of a defamation claim is a false or defamatory statement concerning another that is published to a third party)) with Williams v. Aetna Fin. Co., 700 N.E.2d 859, 868, 83 Ohio St.3d 464 (Ohio 1998)(stating an element of fraud is a false representation or concealment of fact which is material to the transaction at hand).

Defamation claims are subject to a one-year statute of limitations under Ohio law and they are not subject to the discovery rule. Ohio Rev. Code § 2305.11(A); Lewis v. Del. County JVSD, 829 N.E.2d 697, 700, 161 Ohio App. 3d 71 (Ohio Ct. App. 2005), Cramer v. Fairfield Med. Ctr., 914 N.E.2d 447, 458, 182 Ohio App. 3d 653 (Ohio Ct. App. 2009), Glass v. Glass, No. 02CA704, 2003 Ohio 4477, ¶ 20 (Ohio Ct. App. August 13, 2003), Singh v. ABA Publ. ABA, No. 02AP-1125, 2003 Ohio 2314, ¶ 22 (Ohio Ct. App. May 8, 2003). The date of accrual for Lasmer's deceptive trade practices claim is the date that AMG made the alleged disparaging statements. As noted above, AMG communicated the alleged disparaging statements, and Lasmer was allegedly injured thereby, at the latest, on February 1, 2005 and April 18, 2005. Because Lasmer did not bring its deceptive trade practices act claim within one year from these dates, the statute of limitations has run and its claim is barred.

**C.  Fraud Claim**

Lasmer alleges that AMG engaged in fraud when it informed the government of the results of the first DTB test, and that the government "relied on the first DTB report in awarding the solicitation to AMG." Complaint, ¶ 100. Lasmer further alleges that the government "relied on representations by AMG . . . in debarring Lasmer . . " Complaint, ¶ 101. Lasmer also alleges

that AMG engaged in fraud when it misrepresented to the government that Lasmer was to blame for HMMWV suspension system failures, and that the government "relied on AMG's representations that Lasmer was to blame . . . in awarding the solicitation to AMG," and "relied on AMG's representations that Lasmer was to blame . . . in debarring Lasmer for three years." Complaint, ¶¶ 111, 112. AMG alleges that Lasmer cannot make out its claim for fraud because it has not shown any reliance by Lasmer on the alleged misrepresentations, as opposed to reliance by the government on those statements.

Under Ohio law, the elements of fraud are: (1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately caused by that reliance. Williams v. Aetna Fin. Co., 700 N.E.2d 859, 868, 83 Ohio St. 3d 464 (Ohio 1998). "The absence of one element is fatal to recovery." Westfield Ins. Co. v. Huls Am., 714 N.E.2d 934, 951, 128 Ohio App. 3d 270 (Ohio Ct. App. 1998) (quoting Manning v. Len Immke Buick, Inc., 276 N.E.2d 253, 255, 28 Ohio App. 2d 203 (Ohio Ct. App. 1971). Where a plaintiff would not

have done anything differently had the false statement not been made, they cannot have said to have detrimentally relied on it. See Andersons, Inc. v. Consol, Inc., 348 F.3d 496, 506-507 (6th Cir. Ohio 2003); Lin v. Gatehouse Constr. Co., 84 Ohio App. 3d 96, 103 (Ohio Ct. App. 1992)(where plaintiffs were required to plead reliance on their part); Russell v. Northwood, No. WD-97-050, 1998 Ohio App. LEXIS 717, at *10(Ohio Ct. App. Feb. 27, 1998); Sooy v. Ross Incineration Servs., No. 98CA007031, 1999 Ohio App. LEXIS 4889, at *28 (Ohio Ct. App. Oct. 20, 1999).

Here, it was not Lasmer who relied on the allegedly false statements made by AMG and DTB. Instead, it was the government who allegedly relied on those statements and ultimately proposed Lasmer for debarment because of them. Thus, Lasmer has failed to state a claim for fraud against AMG.

Lasmer relies on the discussion of Langridge v. Levy, 2 M. & W. 518, in Wells v. Cook, 16 Ohio St. 67, 70-74 (1865), and argues that under Langridge, any person who is forseeably harmed by a misrepresentation has a cause of action for fraud. Lasmer misreads Wells and its discussion of Langridge. According to the Wells court, in Langridge, the plaintiff's father bought a gun from defendant for both himself and plaintiff to use. Wells, 16 Ohio St. at 70-71. The defendant falsely represented that the gun was made by a particular maker, when in fact it was of inferior quality. Id. at 71. "[T]he plaintiff knowingly and

confiding in the warranty, used the gun, which but for the warranty he would not have done." Id. Thereafter, the gun injured the plaintiff. Id. Clearly from the facts of Langridge, the plaintiff in that case *relied* on the false statement made by that defendant, even though it was made to his father and not to him. The Wells court then summarized that "false and fraudulent representations must have been intended to be acted on, in a manner affecting himself, by the party who seeks redress for consequential injuries." Id. at 74. Thus, under these cases, reliance on the part of the plaintiff is required.

Plaintiff's reliance on Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639 (2008), is also misplaced and does not provide a basis for disregarding clear Ohio precedents. In Bridge, the Supreme Court held that a plaintiff asserting a RICO claim predicated on mail fraud need not show reliance on the defendant's alleged misrepresentations as an element of their claim. Id. at 661. The Court stated that "while it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it." Id. at 656. The Court then cited cases holding that a plaintiff could recover if injured by a fraudulent representation made to a third party. Id. at 656-657,

657 n.7. In explaining the significance of these cases, the Court stated:

> "[t]he cases *are not cited as evidence that common-law fraud can be established without a showing of first-party reliance*. Rather, they- along with the Restatement's recognition of specialized torts based on third party reliance- show that fraudulent misrepresentation can proximately cause actionable injury even to those who do not rely on the misrepresentation."

Id. at 657 n. 7 (emphasis added). Thus, the Court makes clear that in fact "first-party reliance is an element of a common-law fraud claim" but that fraudulent misrepresentations may lead to other types of actionable injury, such as wrongful interference with contractual relations. Id. at 657 n.7.

Because Lasmer has not alleged that it relied on the allegedly false statement of AMG, it has not sufficiently plead a claim for fraud, and its fraud claim is dismissed.

**D. Antitrust Claims**

Lasmer alleges that AMG violated the Clayton Act and Sections 1 and 2 of the Sherman Act by substantially lessening the competition in the market for procurement of government HMWVV parts, restraining trade and seeking to create a monopoly by acting in collusion with agents of DSCC and/or perpetrating fraud on DSCC by knowingly submitting false and/or inaccurate test results to the DSCC, resulting in Lasmer's debarment, and entering into a conspiracy with the DSCC to fix the procurement

24

of government contracts by eliminating Lasmer as a competitor. Complaint, ¶¶ 177-179. Lasmer states in its memo contra that is relying on the Clayton Act only so far as it empowers private individual antitrust suits in Section 4. Doc. 24, p. 18. 15 U.S.C. § 15(a).

In order to bring a claim under Section 1 or 2 of the Sherman Act, a plaintiff who alleges it was harmed by a buyer's decision to buy from one seller rather than from plaintiff requires plaintiff to allege and prove "harm, not just to a single competitor, but to the competitive process, i.e., to competition itself." Nynex Corp. v. Discon, 525 U.S. 128, 135 (1998)(applying antitrust injury analysis to both Section 1 and Section 2 claims); See Expert Masonry, Inc. v. Boone County, 440 F.3d 336, 346 (6th Cir. 2006). "Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws." Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 225 (1993). See also Expert Masonry, Inc., 440 F.3d at 346.

The Sixth Circuit has held that where a government buyer conspired or schemed with one, and only one, bidder and as a consequence awarded contracts to that bidder even though its bid may not have been the best bid, such behavior does not constitute anticompetitive conduct. Expert Masonry, 440 F.3d at 345-348.

25

> [W]e decline to extend antitrust liability to give
> succor to dejected buyers or sellers who simply allege
> that one buyer and one seller colluded to reach a deal
> that may or may not have been inferior to the deal
> offered by the disappointed party. The parties may
> break a host of state or federal laws and
> regulations in making a side deal or in otherwise
> circumventing the bidding process in reaching a final
> arrangement, but they do not breach Section 1 of the
> Sherman Act where the alleged vertical agreements
> involve only one buyer and one seller.

Id. at 348.

Here, Lasmer has failed to allege an antitrust injury. Its allegations that AMG "substantially lessen[ed] the competition in the market of procurement for United States government's HMWVV parts," Complaint, ¶ 177, "restrained trade," Complaint, ¶ 178, and "sought to create a monopoly" Complaint, ¶ 178, are merely conclusory.  The Complaint alleges that AMG made misrepresentations about Lasmer to the government that resulted in Lasmer being debarred. Complaint, ¶ 178. The facts alleged fail to indicate that Lasmer's debarment resulted in a lessening of competition in the marketplace as a whole, restrained trade, or created a monopoly. The facts alleged in the Complaint do not amount to an allegation that AMG harmed the competitive process for bidding on government contracts or attempted to monopolize government contracts for HMMWV parts. Lasmer's antitrust claims are dismissed.

**E. Bivens Action Claim and § 1983 Claim**

Lasmer is asserting a Bivens action under <u>Bivens v. Six</u> <u>Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), and a violation of 42 U.S.C. § 1983 against the government defendants.[2] Complaint, ¶ 181-191. Lasmer claims to have a liberty and property interest in having its bid on a solicitation fully and fairly considered, and further claims to have a liberty interest in its reputation as a federal contractor. Complaint, ¶¶ 182, 183. Lasmer claims that the government defendants deprived it of the due process of law guaranteed by the Fifth and Fourteenth Amendments by representing to the debarring official that Lasmer had supplied nonconforming goods that presented a "threat to the warfighter," by conspiring to exclude Lasmer from competition for the solicitation, by meeting in secret with AMG to cast blame on Lasmer for the HMMWV failures, and by willfully misrepresenting the frequency and seriousness of defects in Lasmer-supplied items. Complaint, ¶¶ 185-188.

---

[2] Notably, a § 1983 action can only be brought against persons acting under color of state law. Accordingly, this claim is not viable against these employees acting under color of federal law. The federal government and its officials are not generally subject to suit under 42 U.S.C. § 1983. <u>Ana Leon T. v. Fed.</u> <u>Reserve Bank</u>, 823 F.2d 928, 931 (6th Cir. 1987), <u>Strickland v.</u> <u>Shalala</u>, 123 F.3d 863, 866 (6th Cir. 1997). Therefore, Lasmer fails to state a claim under § 1983 regardless of whether it is barred by the statute of limitations.

Defendants move to dismiss these claims on the grounds that they are barred by the statute of limitations. Lasmer argues in its motion, however, that it suffered a continuous violation of its constitutional rights because it was debarred in 2005 for three years, and that debarment was extended in 2008, within the limitations period. Doc. 25, p. 16.

Bivens actions and actions brought under 42 U.S.C. § 1983 are governed by the two-year statute of limitations for personal injury actions found in Ohio. Ohio Rev. Code § 2305.10. Friedman v. Estate of Presser, 929 F.2d 1151, 1158-1159 (6th Cir. 1991); LRL Props. v. Portage Metro Hous. Auth., 55 F.3d 1097, 1105 (6th Cir. 1995) (citing Browning v. Pendleton, 869 F.2d 989, 992 (6th Cir. 1989) (en banc)).[3] The statute begins to run when plaintiff knew or should have known of the injury which is the basis of his claim. Friedman, 929 F.2d at 1159; LRL Props., 55 F.3d at 1107.

Lasmer argues its Bivens action and § 1983 action are not barred because the continuing-violation doctrine applies to its case. The continuing-violation doctrine applies if: "(1) the

---

[3] Any claims for conspiracy under Bivens or under § 1983 are subject to the same statute of limitations. See LRL Prop., 55 F.3d at 1106-1107 (6th Cir. 1995)(applying the same two year statute of limitations to § 1983 claims as to claims of conspiracy under § 1983), Heller v. Plave, 743 F. Supp. 1553, 1569-1571 (S.D. Fla. 1990) (applying the same statute of limitations to the plaintiff's conspiracy action as to the underlying Bivens action).

defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." Hensley v. City of Columbus, 557 F.3d 693, 697 (6th Cir. 2009); see also Tolbert v. State of Ohio Dep't of Transp., 172 F.3d 934, 940 (6th Cir. 1999). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Tolbert, 172 F.3d at 940 (quoting National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991)(internal quotation marks and citations omitted)).

All of the actions allegedly taken by the government defendants in violation of Lasmer's constitutional rights occurred in 2005 or prior to 2005. Lasmer had reason to know of this alleged wrongful behavior at the latest in June of 2005, when it discovered that first DTB report was for AMG. Complaint, ¶ 59.

There are no allegations in the Complaint that the government defendants' alleged wrongful conduct continued after 2005. There are no allegations in the Complaint that defendants continued to engage in a pattern of behavior. Although Lasmer continued to feel the "ill effects" throughout its period of debarment, this is not sufficient to show a continuing violation. Clearly, Lasmer's claims rest on events that occurred

more than two years prior to the filing of its complaint.

Lasmer's argument that Spradlin committed a "continuing violation" in 2008 when she recommended Lasmer for an extension of debarment is without merit. See Doc. 25, p. 18. Lasmer's debarment was extended because Lasmer continued to contract with the government during its debarment.[4] See Hickey v. Chadick, No. 2:08-cv-00824, Doc. 54, p. 6. Lasmer has not alleged that this recommendation was a violation of its constitutional rights; in fact, the Complaint makes no mention of the 2008 debarment. Spradlin's recommendation was in no way related to the alleged due process violations that Lasmer complains of in its complaint. While it is true that the 2008 extension would not have occurred had the 2005 debarment order not been in place, Spradlin's 2008 recommendation that Lasmer's debarment be extended would be considered, at most, a "continual ill effects from an original violation" rather than an additional unlawful act. Tolbert, 172 F.3d at 940 (quoting National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991)(internal quotation marks and citations omitted)).

---

[4] This is an undisputed fact found in the record in the related Hickey case. A court may take judicial notice of prior proceedings in and the record of closely related cases without converting a Rule 12(b)(6) motion to a motion for summary judgment. See Cavaliers Operating Co., LLC v. Ticketmaster, Case No. 07-cv-2317, 2008 U.S. Dist. LEXIS 93112, *30 (N.D. Ohio Sept. 30, 2008); Demsey v. Demsey, No. 1:09-CV-503, 2010 U.S. Dist. LEXIS 49987, *8 n.4 (N.D. Ohio May 20, 2010).

**F. CONSPIRACY**

Lasmer has alleged a claim for civil conspiracy against all the defendants in this case.  Complaint, ¶¶ 192-198, 199-216. A claim for civil conspiracy is a derivative claim under Ohio law and cannot be maintained absent an underlying tort that is actionable without the conspiracy. Chesher v. Neyer, 477 F.3d 784, 796, 805 (6th Cir. 2007); Williams v. Aetna Fin. Co., 700 N.E.2d 859, 868, 83 Ohio St. 3d 464 (Ohio 1998); Morrow v. Reminger & Reminger Co. LPA, 915 N.E.2d 696, 711-712, 183 Ohio App. 3d 40 (Ohio Ct. App. 2009). "The applicable statute of limitations for the underlying cause of actions applies to the civil conspiracy charge." Cramer v. Fairfield Med. Ctr., 914 N.E.2d 447, 458, 182 Ohio App. 3d 653 (Ohio Ct. App. 2009).

"A civil conspiracy claim cannot succeed without an underlying unlawful act [and] [w]here all the substantive causes of action on which a conspiracy claim is based are without merit, a conspiracy claim must also fail." Bowshier v. Chrysler Fin. Corp., 144 F. Supp. 2d 919, 933-934 (S.D. Ohio 2001). See also Hollinghead v. Bey, No. L-99-1351, 2000 Ohio App. LEXIS 3234, at *22 (Ohio App July 21, 2000) (dismissing conspiracy claim because the malicious prosecution claim, the underlying cause of action, was barred by the statute of limitations), Kosik v. Banc One Ins. Agency, Inc., No. 4:07-cv-2788, 2008 U.S.

Dist. LEXIS 108001, at *17 (N.D. Ohio Apr. 28, 2008). Because all of Lasmer's underlying claims have been dismissed, its conspiracy claim must also be dismissed.

## VI. AMENDED COMPLAINT

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a complaint shall be freely given when justice so requires. However, leave to amend need not be granted if the amended complaint could not withstand a motion to dismiss, or if the amendment would be futile. Miller v. Calhoun County, 408 F.3d 803, 817 (6th Cir. 2005).

The court concludes that permitting leave to amend in this case would be futile. Lasmer's Amended Complaint does not demonstrate that it filed its negligent misrepresentation claim, tortious interference claims, deceptive trade practices claim, Bivens claim, or § 1983 claim within the statute of limitations. Furthermore, Lasmer's Amended Complaint still fails to state a fraud claim, an antitrust claim, or a civil conspiracy claim for the reasons stated above. Lasmer's motion to amend its complaint is denied.

## VII. CONCLUSION

For the foregoing reasons, Lasmer's motion to amend its

32

complaint (Doc. 22) is DENIED. DTB's motion to dismiss (Doc. 13), the government defendant's motion to dismiss (Doc. 17), and AMG's motion for judgment on the pleadings (Doc. 15) are GRANTED.

It is so ORDERED.

                    s/ James L. Graham
                    JAMES L. GRAHAM
                    United States District Judge


DATE: September 30, 2010